# United States Court of Appeals

*for the*

# Sixth Circuit

Case No. 26-1803

VITAMIN ENERGY, INC,

*Plaintiff-Appellant,*

– v. –

MANOJ BHARGAVA; LIVING ESSENTIALS, LLC;
INTERNATIONAL IP HOLDINGS, LLC; INNOVATION VENTURES, LLC,

*Defendants-Appellees.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN IN NO. 2:24-CV-13125,
HONORABLE JONATHAN J.C. GREY

## BRIEF FOR PLAINTIFF-APPELLANT

STEVEN C. SUSSER
EVIA LAW PLC
*Attorney for Plaintiff-Appellant*
231 South Old Woodward Avenue,
Suite 220
Birmingham, Michigan 48009
(248) 243-1201

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (625476)

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit Case Number: 26-1803 Case Name: Vitamin Energy, Inc. v. Manoj Bhargava,

Name of counsel: Steven Susser (P52940)

Pursuant to 6th Cir. R. 26.1, Vitamin Energy, Inc.
*Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on September 11, 2026 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Steven Susser (P52940)
Evia Law PLC
steven@evialaw.com

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..................................... viii

STATEMENT REGARDING SUBJECT-MATTER AND APPELLATE JURISDICTION..............................................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............................2

I. STATEMENT OF THE CASE ......................................................................4

A. Factual Background..........................................................................4

B. Procedural History.............................................................................8

II. SUMMARY OF THE ARGUMENT ...........................................................10

III. STANDARD OF REVIEW.........................................................................12

A. Standard Applicable to the Motion to Dismiss ..................................13

B. Standard Applicable to the Denial of the Motion for Relief..............14

IV. ARGUMENT............................................................................................16

A. The District Court Erred in Rejecting Well-Pleaded Allegations Supporting Vitamin Energy's Monopolization Claim........................16

B. Vitamin Energy's Remaining Claims ...............................................36

C. The District Court Erred in Refusing to Grant Leave to Amend........38

V. CONCLUSION...........................................................................................41

**TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Am. Tobacco Co. v. United States*,
328 U.S. 781 (1946) .......................................................................18

*Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*,
917 F.2d 1413 (6th Cir. 1990) .......................................................36

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985).............................................................16, 25

*United States ex rel. Bledsoe v. Community Health Sys., Inc.*,
342 F.3d 634 (6th Cir. 2003) .........................................................38

*Bell Atlantic Corp v. Twombly*,
550 U.S. 544 (2007) ....................................................13, 14, 33, 34, 35

*Brown v. Matauszak*,
415 F. App'x 608 (6th Cir. 2011) ....................................................38

*Byars v. Bluff City News Co.*,
609 F.2d 843 (6th Cir. 1979) .........................................................17

*Churchill Downs Inc. v. Thoroughbred Horsemen's Group, LLC*,
605 F. Supp. 2d 870 (W.D. Ky. 2009) ...............................................13

*Conwood Co., LP v. U.S. Tobacco Co.*,
290 F.3d 768 (6th Cir. 2002), *cert. denied*, 537 U.S. 1148 (2003)
.......................................viii, 8, 16, 21, 22, 23, 27, 32, 33, 36, 37

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384, 405 (1990). ..............................................................14

*CoStar Group, Inc. v. Commercial Real Estate Exchange, Inc.*,
150 F.4th 1056 (9th Cir. 2025), *cert. denied,* No. 25-667 (U.S. Mar
23, 2026) ...................................................viii, 16, 17, 21, 23, 26

*Courtright v. City of Battle Creek*,
839 F.3d 513 (6th Cir. 2016) .........................................................12

*Doe v. Baum*,
903 F.3d 575 (6th Cir. 2018) ........................................................................14

*Double D Spotting Serv., Inc. v. Supervalu, Inc.*,
136 F.3d 554 (8th Cir. 1998) ........................................................................37

*EEOC v. Ohio Edison Co.*,
7 F.3d 541, 546 (6th Cir. 1993) ........................................................................38

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*,
720 F.3d 33 (1st Cir. 2013)........................................................................13

*Inner City Contracting, LLC v. Charter Township of Northville, Mich.*,
87 F.4th 743 (6th Cir. 2023) ........................................................................12

*Jones v. Varsity Brands, LLC*,
618 F. Supp. 3d 725 (W.D. Tenn. 2022) ........................................................17

*Kentucky v. Marathon Petroleum Co., LP*,
191 F. Supp. 3d 694 (W.D. Ky. 2016)....................................................18, 19, 26

*Kerchen v. Univ. of Mich.*,
100 F.4th 751 (6th Cir. 2024) ........................................................................12, 31

*Keweenaw Bay Indian Cmty. v. Mich.*,
11 F.3d 1341 (6th Cir. 1993) ........................................................................38

*Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*,
616 F.3d 612 (6th Cir. 2010) ........................................................................14

*LePage's, Inc. v. 3M*,
324 F.3d 141 (3d Cir. 2003) ........................................................................19

*Lorain Journal Co. v. United States*,
342 U.S. 143 (1951)........................................................................36

*Louisa Coca-Cola Bottling Co. v. Pepsi-Cola Metro. Bottling Co., Inc.*,
94 F. Supp. 2d 804 (E.D. Ky. 1999)........................................................................27

*McWane, Inc. v. FTC*,
783 F.3d 814 (11th Cir. 2015) ........................................................................30

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
465 U.S. 752 (1984) .......... 13

*Morse v. McWhorter*,
290 F.3d 795 (6th Cir. 2002) .......... 14

*Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*,
632 F.2d 21 (6th Cir. 1980). .......... 15

*Newberry v. Silverman*,
789 F.3d 636 (6th Cir. 2015) .......... 38

*NicSand, Inc. v. 3M Co.*,
507 F.3d 442 (6th Cir. 2007) .......... viii, 25

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671, 698 (6th Cir. 2004) .......... 38

*PSI Repair Servs. v. Honeywell, Inc.*,
104 F.3d 811 (6th Cir. 1997) .......... 17

*Riverview Health Inst. LLC v. Med. Mut. of Ohio*,
601 F.3d 505 (6th Cir. 2010). .......... 15

*Saad v. Healthgrades Marketplace, LLC*,
788 F. Supp. 3d 809, 815 (E.D. Mich. Oct. 30, 2024) .......... 24

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) .......... 14

*Scooter Store Inc. v. SpinLife.com, LLC*,
777 F. Supp. 2d 1102 (S.D. Ohio 2011) .......... 36, 37

*Shamrock Mktg., Inc. v. Bridgestone Bandag, LLC*,
775 F. Supp. 2d 972 (W.D. Ky. 2011) .......... 12

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993) .......... 35

*Tennessean Truckstop, Inc. v. NTS, Inc.*,
875 F.2d 86 (6th Cir. 1989) .......... 27

*United States v. Dentsply Int'l, Inc.*,
399 F.3d 181 (3d Cir. 2005) ....................................................................16, 21

*United States v. Grinnell Corp.*,
384 U.S. 563 (1966) ..........................................................................18, 30

*Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*,
648 F.3d 452 (6th Cir. 2011) ....................................................................13, 25

*White Mule Co. v. ATC Leasing Co. LLC*,
540 F. Supp. 2d 869 (N.D. Ohio 2008) ..........................................................18

*Winget v. JP Morgan Chase Bank, N.A.*,
537 F.3d 565 (6th Cir. 2008) ......................................................................12

*ZF Meritor LLC v. Eaton Corp.*,
696 F.3d 254 (3d Cir. 2012) ................................................... viii, 19, 20, 21, 26

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ..........................................................................8

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1331 ..........................................................................................1

Clayton Act § 4, 15 U.S.C. § 15(a)..................................................................1

Sherman Act, 15 U.S.C. § 2 ..................................................... 1, 2, 8, 12, 15, 17, 21

**Rules**

Fed. R. App. P. 4(a) ......................................................................................1

Fed. R. App. P. 34(a) ................................................................................. viii

Fed. R. Civ. P. 12(b)(6)..................................................................................12

Fed. R. Civ. P. 15 ......................................................................................14, 38

Fed. R. Civ. P. 59(e).................................................................................1, 8, 14

Fed. R. Civ. P. 60(b) ................................................................................1, 8, 14

6th Cir. R. 34(a) ......................................................................................... viii

**Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application,* 1821a1 (5th ed. 2022) ....................17

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Under Fed. R. App. P. 34(a) and Sixth Circuit Rule 34(a), Vitamin Energy requests oral argument. This appeal raises an important and unsettled question. The question is whether an alleged monopolist's rebate-based exclusive agreements with retailers must be pleaded under a predatory pricing standard, or under the exclusive-dealing framework this Court applied in *Conwood Co., LP v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002). Resolving that question will require the Court to address how *Conwood* and *NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007) (en banc), apply at the pleading stage. It will also require the Court to consider *ZF Meritor LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012), and the Ninth Circuit's recent decision in *CoStar Group, Inc. v. Commercial Real Estate Exchange, Inc.*, 150 F.4th 1056 (9th Cir. 2025). The appeal also involves two decisions below that were rejected without oral argument and a proposed amended complaint that was rejected without discussion. Oral argument will help the Court work through the Complaint's specific allegations and this layered procedural history.

## STATEMENT REGARDING SUBJECT-MATTER AND APPELLATE JURISDICTION

This Court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. §1291, as it arises from a final judgment of the United States District Court for the Eastern District of Michigan within the Sixth Circuit, concerning claims brought under Section 2 of the Sherman Act, § 2. This Court has direct federal question jurisdiction pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C. § 1331. (Complaint ("Compl."), R.1, PageID #6-7, ¶ 17.)

On August 29, 2025, the District Court granted 5-Hour's motion to dismiss and dismissed the Complaint with prejudice. (Order Granting Defendants' Motion to Dismiss ("Order"), R.28, PageID #795-96; Judgment, R.29, PageID #798.) On September 12, 2025, Vitamin Energy filed a motion for relief under Federal Rules of Civil Procedure 59(e) and 60(b). (Plaintiff's Motion for Relief ("Mot. for Relief"), R.30, PageID #800-18.) Vitamin Energy filed that motion within 28 days after the judgment, so it extended the time to appeal. Fed. R. App. P. 4(a)(4)(A)(iv), (vi). The District Court denied the motion on August 21, 2026. (Opinion and Order Denying Motion for Relief ("Op. & Order"), R.37, PageID #1068-85.) Vitamin Energy filed its notice of appeal on September 9, 2026. (Notice of Appeal, R.39, PageID #1107-08.) The notice of appeal is timely under Fed. R. App. P. 4(a)(1)(A) and 4(a)(4)(A).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the District Court applied the wrong legal standard for exclusive dealing under Section 2 of the Sherman Act when it required Vitamin Energy to plead that 5-Hour used "illegal means to secure their counter rack placement and rebate agreements" in order to establish antitrust injury.

2. Whether the District Court improperly engaged in fact finding at the motion-to-dismiss stage when it concluded that 5-Hour's exclusive counter placement agreements were not anticompetitive because they "seem to be within the norm of retail contracts for energy shot companies."

3. Whether the District Court committed reversible error when it concluded that a monopolist's use of exclusive contracts to cause competing products to be "relegated to less prominent placements or removed from [a retailer's] stores" is "the natural results of rigorous competition, not antitrust violations."

4. Whether the District Court committed reversible error when it disregarded detailed factual allegations supporting the existence of an antitrust injury, including allegations that, as a direct result of 5-Hour's exclusive agreements with retailers, Vitamin Energy and other energy shot companies suffered lost revenues and substantial market foreclosure, and consumers experienced reduced choices of energy shot products.

5. Whether, the District Court erred in dismissing the Complaint with no leave to amend.

6. Whether the District Court erred in denying the Motion for Relief.

7. Whether the District Court erred in denying the Motion for Relief with no leave to amend.

# I. STATEMENT OF THE CASE

## A. Factual Background

### 1. The Relevant Market

The two-ounce energy shot market and premium price segment of the two-ounce energy shot market are, respectively, the relevant market and submarket in this case. The geographic market is the United States. Defendants Living Essentials, LLC, International IP Holdings, LLC, and Innovation, LLC (collectively "5-Hour"), as well as Plaintiff Vitamin Energy, Inc. ("Vitamin Energy") compete in the relevant markets.

### 2. 5-Hour's Monopoly Power

With a 90 percent share of the broader energy shot market and a 98 percent share of the premium energy shot submarket, 5-Hour has monopoly power in the relevant markets. (Compl., R.1, PageID #8, ¶¶ 25-26.) By 5-Hour's own estimation, it has "about 92 or 93%" of the energy shot market, compared to "the next guy [who] has just 1.5%." (Compl., R.1, PageID #8-9, ¶ 27 (quoting Living Essentials LLC CEO Manoj Bhargava).)

### 3. 5-Hour's Anticompetitive Conduct

To maintain its dominant market power in the face of new competition from Vitamin Energy and other new entrants in the two-ounce energy shot market, 5-Hour entered unlawful exclusive agreements with retailers that effectively foreclosed competition in the energy shot market. (Compl., R.1, PageID #59-62, ¶¶ 219-227,

232-34.) In these agreements, 5-Hour offered retailers rebates but only if they met significant 5-Hour ENERGY sales volumes in each of their locations; given 5-Hour's already dominant market position, to meet these sales volume requirements, retailers were forced to, and did, remove competitors' sales racks from point-of-sale locations. (Compl., R.1, PageID #23-24, 29-30, ¶¶ 87-90, 115-18.) Because point-of-sale placement is critical to energy shot companies' ability to attract new customers and grow sales, (Compl., R.1, PageID #10, 27, ¶¶ 35-39, 106), 5-Hour's exclusive agreements blocked 5-Hour's rivals from competing on equal footing, thereby allowing 5-Hour to perpetuate its monopoly. (Compl., R.1, PageID #27, ¶ 106.)

5-Hour has entered exclusive agreements with many of the largest convenience and non-convenience store retailers in the United States, including Pilot Flying J, Casey's General Stores, Inc. ("Casey's"), and Huck's Market convenience stores, as well as Dollar General. (Compl., R.1, PageID #23, 29-30, 35, ¶¶ 87, 115, 136, 138.) These are just examples. Discovery is likely to reveal that 5-Hour's scheme to use exclusive agreements to block competition in the energy shot market extends to many other retailers. In sum, 5-Hour's exclusive agreements may cover 50 percent or more of all available top 100 convenience chain store point-of-sale locations in the United States, not to mention many other non-convenience store

retailers, such as Dollar General, which operates over 25,000 stores. (Compl., R.1, PageID #35, ¶¶ 137-38.)

### 4. The Resulting Antitrust Injuries

5-Hour's anticompetitive conduct harmed, and continues to harm, competition in the energy shot market. Retailers, seeking to meet 5-Hour's sales volumes requirements, have removed competitors' energy shot sales racks from point-of-sale locations, causing those companies, which include but are not limited to Vitamin Energy, to suffer significant sales declines and market foreclosure. (Compl., R.1, PageID #26-27, ¶¶ 102-03, 106.) For example, 5-Hour's exclusive agreement with Pilot Flying J alone has caused Vitamin Energy's sales at those locations to fall by more than 30 percent, thereby preventing Vitamin Energy taking any share from 5-Hour in these stores and allowing 5-Hour to maintain its monopoly. (Compl., R.1, PageID #24-25, ¶¶ 94-95.) These sales losses are compounded by Vitamin Energy's lost investment in its sales racks, which were removed by retailers pursuant to their agreements with 5-Hour and which were never returned. (Compl., R.1, PageID #21, 24, ¶¶ 78, 93.) The losses caused by 5-Hour's alleged conduct have continued to harm Vitamin Energy. (Compl., R.1, PageID #25-26, ¶¶ 98, 100-01.)

Additionally, by granting point-of-sale rack placement almost exclusively to 5-Hour, the exclusive agreements deprive consumers of the ability to readily compare energy shot products at the most important display location for energy shot

products. (Compl., R.1, PageID #27, ¶ 105.) ("For lower priced consumer goods about which consumers are unlikely to perform much if any pre-sale research, removing competitive products from preferred placement locations in which they can be readily compared with the dominant 5-Hour ENERGY shot reduces the information available to consumers that shows there are alternative choices . . . .").

Indeed, the Complaint makes these assertions about the impact of point-of-sale or retail counter placement on a consumer's buying decision, all of which should have been taken as true for purposes of the motion to dismiss:

- Products like energy shots are often impulse purchases. (Compl., R.1, PageID #27, ¶ 106.)
- Sales display placement at or near the cash register ensures that most retail customers encounter a premium energy shot, like Vitamin Energy's, at or near the point of sale. (Compl., R.1, PageID #9-10, ¶¶ 34-36.)
- Lower cost, value energy shots are relegated to the Health & Beauty Aids sections of retail stores or even in the area of a retail store devoted to novelty items. (Compl., R.1, PageID #10, ¶ 37.)
- Vitamin Energy shots placed at the counter or point-of-sale sold in much higher volumes than Vitamin Energy shots placed in the Health & Beauty Aids section. (Compl., R.1, PageID #10, ¶ 39.)

- Placement at the counter point-of-sale increased Vitamin Energy shot sales by a factor of 25 times or more. (Compl., R.1, PageID #34, ¶ 134.)
- Reducing the opportunity for consumers to directly compare products at the point-of-sale (retail counter) increases the barriers to entry for competitors, which harms competition in the market for energy shots. (Compl., R.1, PageID #27, ¶¶ 106-07.)

### B. Procedural History

Vitamin Energy initiated the underlying lawsuit on November 22, 2024, asserting, among others, claims of: (1) unlawful monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2 ("Section 2"), (Compl., R.1, PageID #56-61, ¶¶ 199-227); and (2) attempted monopolization under Section 2. (Compl., R.1, PageID #61-63, ¶¶ 228-38.)[1] On February 10, 2025, 5-Hour filed a motion to dismiss asserting Vitamin Energy's antitrust claims failed because they did not adequately allege harm to competition or market-wide injury, and because the attempted monopolization claim did not allege specific intent. (Defendants' Motion to Dismiss ("Mot."), R.19, PageID #396 (filed under seal).) On August 29, 2025, Judge Jonathan J.C. Grey of

---

[1] The Complaint also brought claims of false advertising under 15 U.S.C. § 1125(a)(1)(B) and of common law civil conspiracy against all Defendants, which included Manoj Bhargava in his individual capacity. Vitamin Energy does not appeal the District Court's dismissal of the false advertising and civil conspiracy claims and no longer seeks to bring claims against Mr. Bhargava in his individual capacity.

the District Court of the Eastern District of Michigan granted 5-Hour's motion to dismiss. (Order, R.28, PageID #795-96.)

On September 12, 2025, Vitamin Energy filed Plaintiff's Motion for Relief Under Fed. R. Civ. P. 59(e) and 60(b)(1)-(2). (Mot. for Relief, R.30, PageID #800-18.) In that Motion for Relief, Vitamin Energy argued that the District Court had failed to follow the Sixth Circuit's guidance in *Conwood* and also asked for an opportunity to file an amended complaint. (Mot. for Relief, R.30, PageID #809-18.) In its August 21, 2026 Opinion and Order Denying Plaintiff's Motion for Relief of Judgment (ECF No. 30) and Denying as Moot Plaintiff's Motion for Status Conference Regarding Plaintiff's Motion for Relief (ECF No. 36), the District Court denied Vitamin Energy's Motion for Relief. (Op. & Order, R.37, PageID #1068-85.)

In that decision, the district court accepted as true that Vitamin Energy's agreement with Pilot differed from 5-Hour's exclusive agreements with Pilot. (Op. & Order, R.37, PageID #1073-74.) It also acknowledged that the Complaint "alleges facts to establish that 5-Hour Energy attained and retained market dominance and has market power." (Op. & Order, R.37, PageID #1079 n.5.) But the court did not change its ruling. It held that Vitamin Energy "has only alleged the exclusive nature" of 5-Hour's agreements. (Op. & Order, R.37, PageID #1078.) It faulted Vitamin Energy for not alleging that 5-Hour was "selling below cost." (Op. & Order, R.37, PageID #1076.) And it held that amendment would be futile, without discussing any

of the allegations in Vitamin Energy's proposed amended complaint. (Op. & Order, R.37, PageID #1084.)

Judge Grey's rulings serve as the basis of the present appeal.

## II. SUMMARY OF THE ARGUMENT

In granting 5-Hour's motion to dismiss, the District Court made a series of legal and factual errors pertaining to each element of the Complaint's monopolization claim:

***First***, throughout its opinion, the District Court ignored the applicable plausibility pleading standard by failing both to accept all well-pleaded allegations as true and to draw all reasonable inferences in Vitamin Energy's favor. Instead, the District Court made improper findings of facts that credited 5-Hour's arguments over the specifically pled allegations set forth in the Complaint. For example, the District Court concluded 5-Hour's exclusive agreements with retailers were "within the norm" of the energy shot market despite the Complaint's specific allegations they were illegal, much less normal Indeed, the District Court ignored the applicable function of exclusive allegations in Section 2 claims by requiring Vitamin Energy to show 5-Hour used "illegal" means to procure its exclusive agreements with retailers. But that is not the law in this Circuit.

***Second***, the District Court erroneously concluded that although the Complaint alleged monopoly power, 5-Hour's advantages were based on size and not the

exercise of monopoly power. Again, this is a factual determination better suited for post-discovery dispositive motions.

***Third***, the District Court wrongly determined that Vitamin Energy failed to allege anticompetitive conduct. But, in fact, the Complaint expressly asserts that 5-Hour's exclusive agreements with retailers included rebate payments that were implicitly conditioned on those retailers' removal of competing energy shot sales racks from critical point-of-sale locations.

***Fourth***, the District Court erred in concluding Vitamin Energy failed to allege antitrust injury. But the Complaint alleges that 5-Hour's energy shot competitors suffered financial losses, lost access to key advertising space, and market foreclosure, while their end customers faced reduced freedom of choice. The Complaint alleges that "Defendants have entered into a variety of anticompetitive agreements and taken various actions and steps to illegally prevent Vitamin Energy and other competitors from competing effectively with Defendants' lucrative monopoly in the submarket for premium price shots within the larger 2-ounce energy shot market." (Compl., R.1, PageID #59, ¶ 220.) It is Vitamin Energy's belief that discovery is likely to reveal that energy shot customers paid higher prices than they would have paid in a competitive market.

***Fifth***, because the District Court wrongly determined that Vitamin Energy failed to allege anticompetitive conduct, it conducted no analysis into the sufficiency of the Complaint's attempted monopolization claim.

***Sixth***, the District Court wrongly denied Vitamin Energy leave to amend the Complaint, despite never having given Vitamin Energy any prior opportunity to amend. Courts only should deny leave to amend where the underlying complaint is facially meritless. Here, Vitamin Energy's Complaint is far from meritless and, in fact, contains numerous detailed and specific allegations to support each one of its claims. At a minimum, the Court should have given Vitamin Energy an opportunity to replead. Even after Vitamin Energy offered a proposed amended complaint, the District Court found amendment futile without discussing any of the new allegations.

Accordingly, the Court should reverse the District Court's grant of 5-Hour's motion to dismiss. In the alternative, the Court should grant Vitamin Energy leave to amend the Complaint.

## III. STANDARD OF REVIEW

This Court reviews *de novo* a District Court's grant of a motion to dismiss for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6). *Inner City Contracting, LLC v. Charter Township of Northville, Mich.*, 87 F.4th 743, 749 (6th Cir. 2023) (citing *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008)).

### A. **Standard Applicable to the Motion to Dismiss**

When considering a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 760 (6th Cir. 2024) (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)).

To survive a motion to dismiss, a claim brought under Section 2 of the Sherman Act ("Section 2") must include allegations that "support a plausible finding of the alleged violation." *Shamrock Mktg., Inc. v. Bridgestone Bandag, LLC*, 775 F. Supp. 2d 972, 978 (W.D. Ky. 2011) (citing *Churchill Downs Inc. v. Thoroughbred Horsemen's Group, LLC*, 605 F. Supp. 2d 870, 887 (W.D. Ky. 2009)). But plausibility is distinct from, and a lesser pleading burden than, probability as it "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atlantic Corp v. Twombly*, 550 U.S 544, 556 (2007).

When there are two reasonable interpretations of the evidence, this is not a reason to grant a motion to dismiss, as all plausible inferences are to be drawn in favor of the plaintiff at this phase of litigation. As the Sixth Circuit explained in *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011), "Often, defendants' conduct has several plausible explanations.

Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage." *See also Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 45 (1st Cir. 2013) ("It is not for the court to decide, at the pleading stage, which inferences are more plausible than other competing inferences, since those questions are properly left to the factfinder.").

The Supreme Court has explained that, in the antitrust context, "the choice between two reasonable interpretations" is for the jury. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 767, n.12 (1984). After all, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Indeed, the Sixth Circuit has, in another context, held that a claim can survive an early dispositive motion if that claim is plausible: "[i]f it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018).

### B. Standard Applicable to the Denial of the Motion for Relief

This Court generally reviews the denial of a motion under Rule 59(e) or Rule 60(b) for abuse of discretion. The same standard applies to a request for leave to amend made after judgment. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (citing *Morse v. McWhorter*, 290 F.3d 795, 799 (6th

Cir. 2002)). After judgment, "the Rule 15 and Rule 59 inquiries turn on the same factors." *Id.* at 616 (quoting *Morse*, 290 F.3d at 799).

But abuse of discretion review does not shield a legal error. A district court "would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). Here, the District Court denied relief because it held, again, that the Complaint did not plead anticompetitive conduct or antitrust injury. (Op. & Order, R.37, PageID #1071-81.) Whether a complaint states a claim is a question of law. If the District Court was wrong about the Complaint, its denial of relief rests on the same legal error and is an abuse of discretion.

The District Court's futility ruling is reviewed de novo. When a district court denies leave to amend because the amendment would be futile, this Court reviews that decision de novo. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). An amendment is futile only if the amended complaint "could not withstand a motion to dismiss." *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980). The futility question is therefore the same legal question this Court decides on the dismissal itself: whether the pleading states a claim.

The District Court found the proposed amended complaint futile only because it "does not address the deficiencies" in the original Complaint. (Op. & Order, R.37,

PageID #1084; *see* Proposed Amended Complaint, R.32, PageID #820-902.) That ruling depends entirely on the District Court's view that the original Complaint was deficient. This Court reviews that decision de novo.

## IV. <u>ARGUMENT</u>

The District Court's conclusion that the Complaint failed to plausibly allege a monopolization claim under Section 2 of the Sherman Act is contrary to both the plain language of the Complaint and Sixth Circuit precedent for the reasons set forth below. Furthermore, because the District Court rejected the attempted monopolization claim solely because it erroneously found Vitamin Energy failed to allege anticompetitive conduct in support of the monopolization claim, the District Court wrongly dismissed the Complaint's attempted monopolization claim without giving it due consideration.

### A. <u>The District Court Erred in Rejecting Well-Pleaded Allegations Supporting Vitamin Energy's Monopolization Claim.</u>

Monopolization under Section 2 consists of two elements: (1) the possession of monopoly power in the relevant market, and (2) the willful acquisition, maintenance, or use of that power by anticompetitive or exclusionary means as opposed to "growth or development resulting from a superior product, business acumen, or historic accident." *Conwood Co., LP v. U.S. Tobacco Co.*, 290 F.3d at 782 (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 595-96 (1985)).

"Exclusive dealing arrangements can be an improper means of maintaining a monopoly." *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005). "Thus, even though exclusive dealing is not a necessary element of a § 2 claim, it is sufficient to show anticompetitive conduct." *CoStar Group, Inc. v. Commercial Real Estate Exchange, Inc.*, 150 F.4th at 1068. Accordingly, when considering a Section 2 claim based on defendant's use of exclusive agreements, the Court "must answer only two questions: "[Whether plaintiff] plausibly alleged that [defendant] (1) has monopoly power, including the power to substantially foreclose competition, and (2) entered exclusive agreements, an example of anticompetitive conduct." *Id.* "If [plaintiff] has done so, it will have stated a claim under . . . [Section] 2 of the Sherman Act." *Id.* "[I]nsofar as exclusive dealing is a dominant-firm strategy calculated to create or maintain monopoly, it is addressable under §2 of the Sherman Act." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1821a1 (5th ed. 2022).

For the reasons below, the District Court wrongly determined that the Complaint insufficiently alleges each of these elements. This Court should reverse.

#### 1. Vitamin Energy Adequately Pleaded 5-Hour's Monopoly Power

Although 5-Hour half-heartedly refuted the Complaint's monopoly power allegations, *see* Mot., R.19, PageID #421-23, the District Court eventually agreed that Vitamin Energy had pleaded monopoly power. When it denied the Motion for

Relief, the District Court acknowledged that the Complaint "alleges facts to establish that 5-Hour Energy attained and retained market dominance and has market power." (Op. & Order, R.37, PageID #1079 n.5.) But the District Court erroneously attributed 5-Hour's "advantages" to its size and not its monopoly power. (Op. & Order, R.37, PageID #1079 n.5.) This is the type of fact assessment that is not appropriate at the motion to dismiss stage.

Where the market share alleged is "75-85% or greater," courts are "quick to find monopoly power." *Jones v. Varsity Brands, LLC*, 618 F. Supp. 3d 725, 748 (W.D. Tenn. 2022) (quoting *Byars v. Bluff City News Co.*, 609 F.2d 843, 850 (6th Cir. 1979)); *see also* PSI *Repair Servs. v. Honeywell, Inc.*, 104 F.3d 811 (6th Cir. 1997) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966) (87 percent market share constitutes a monopoly) and *Am. Tobacco Co. v. United States*, 328 U.S. 781, 797 (1946) (over two-thirds market share constitutes a monopoly)). And within the Sixth Circuit, courts consistently find allegations of 70 percent market share sufficient to plausibly allege monopoly power. *White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 885 (N.D. Ohio 2008).

5-Hour's market share exceeds this Circuit's 70 percent threshold. (Compl., R.1, PageID #8-9, 17, 59, ¶¶ 25-28, 58, 216-17 (alleging 5-Hour has between 90-98% share of the relevant market).) Many of the Complaint's market share allegations are based, in part, on 5-Hour's own statements. (Compl., R.1, PageID

#8-9, ¶ 27; *see also* Compl., R.1, PageID #56-57, ¶ 203 ("No later than 2008, *as Defendant Innovation Ventures alleged in court filings* . . . Defendant Innovation Ventures controlled 90% or more of the market for all 2-ounce energy shots sold in the United States.") (emphasis added).) Accordingly, Vitamin Energy plausibly alleged 5-Hour's monopoly power. *See Jones*, 618 F. Supp. 3d at 748 (allegations that defendant controlled 75% and 80% of the relevant markets sufficient to show monopoly power at motion to dismiss stage); *see also Kentucky v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 703 (W.D. Ky. 2016) (allegations of 90 to 95 percent market share sufficient to plead monopoly power).

### 2. Vitamin Energy Adequately Alleged Anticompetitive Conduct

The District Court erred in concluding the Complaint's allegations of anticompetitive conduct were nothing more than "conclusory statements" unsupported by factual allegations. (Order, R.28, PageID #778.) Specifically, the District Court made improper findings of fact and overlooked the Complaint's detailed factual allegations supporting the existence of de facto exclusive agreements between 5-Hour and its retailers. Compl., R.1, PageID #23-24, 29-30, 34-37, ¶¶ 87-91, 115-18, 135, 138, 144; *cf. ZF Meritor LLC v. Eaton Corp.*, 696 F.3d 254, 275, 281 (3d Cir. 2012) (explaining that rebates "linked to purchase (volume or market share) targets are frequently challenged as de factor exclusive dealing arrangements on the grounds that the discounts induce customers to deal exclusively with the firm

offering the rebates," and addressing the case "[w]here, as here, a dominant supplier enters into de facto exclusive dealing arrangements with every customer in the market").

#### *a. Because 5-Hour is a Monopolist, Its Exclusive Agreements Are Subject to Heightened Scrutiny*

Where, as here, defendant is a monopolist, its exclusive agreements are subject to heightened scrutiny. "A monopolist is not free to take certain actions that a company in a competitive . . . market may take, because there is no market constraint on a monopolist's behavior." *Marathon Petroleum,* , 191 F. Supp. 3d at 703 (quoting *LePage's, Inc. v. 3M*, 324 F.3d 141, 151-52 (3d Cir. 2003)); *ZF Meritor*, 696 F.3d at 271, 284 ("Exclusive dealing arrangements are of special concern when imposed by a monopolist."); *Id*. at 284. "([I]f the defendant occupies a dominant position in the market, its exclusive dealing arrangements invariably have the power to exclude rivals."). Because 5-Hour has a monopoly in the relevant market, Part IV.A.1 *supra*, the District Court erred by not subjecting 5-Hour's exclusive agreements to this heightened level of scrutiny.

#### *b. The Complaint Adequately Alleges Anticompetitive Conduct*

In granting the motion to dismiss, the District Court held that Vitamin Energy was required to plead that 5-Hour used "illegal means to secure their counter rack placement and rebate agreements" to sustain its monopolization claim. (Order, R.28,

PageID #778.) The District Court repeated this reasoning when it denied the Motion for Relief. It again faulted Vitamin Energy for not alleging that 5-Hour used "illegitimate means" to get its agreements. (Op. & Order, R.37, PageID #1073.) It asked "why offering rebate incentives is illegal or anticompetitive," and it faulted Vitamin Energy for not alleging that 5-Hour was "selling below cost." (Op. & Order, R.37, PageID #1076.)

But below-cost pricing is part of a predatory pricing claim. Vitamin Energy does not bring a predatory pricing claim. Its claim is that a monopolist used exclusive agreements to keep rivals off the counter. The exclusion does not work through low prices. It works through the understanding that retailers will remove competing racks. (Compl., R.1, PageID #23, ¶ 87.) Where a dominant firm excludes rivals through means other than price, the price-cost test does not control, because "[n]othing in the case law suggests, nor would it be sound policy to hold, that above-cost prices render an otherwise unlawful exclusive dealing agreement lawful." *ZF Meritor*, 696 F.3d at 278. As shown below, the law does not require Vitamin Energy to plead any of these things.

But "[e]xclusive dealing arrangements can be an improper means of maintaining a monopoly." *Dentsply Int'l*, 399 F.3d at 187. "Thus, even though exclusive dealing is not a necessary element of a § 2 claim, it is sufficient to show anticompetitive conduct." *CoStar Group, Inc. v. Commercial Real Estate Exchange,*

*Inc.*, 150 F.4th at 1068. Accordingly, when considering a Section 2 claim based on defendant's use of exclusive agreements, the Court "must answer only two questions:"

> [Whether plaintiff] plausibly alleged that [defendant] (1) has monopoly power, including the power to substantially foreclose competition, and (2) entered exclusive agreements, an example of anticompetitive conduct. If [plaintiff] has done so, it will have stated a claim under . . . [Section] 2 of the Sherman Act.

*Id.* at *6. As already established, the Complaint plausibly alleges 5-Hour's monopoly power. Part IV.A.1 *supra*. Concerning the question of whether the Complaint sufficiently alleges the existence of 5-Hour's exclusive agreements, the Sixth Circuit's opinion in *Conwood Co. LP v. U.S. Tobacco Co.*, is instructive. 290 F.3d at 784.

In *Conwood*, the court found USTC maintained its monopoly in the moist snuff market by entering exclusive agreements with retailers that ensured USTC's moist snuff sales racks were the only ones located at retailers' checkout counters. *Id.* at 783-84, 788. Because the market conditions and facts alleged underlying the present litigation are parallel to those in *Conwood*, the Court should find the Complaint adequately alleges anticompetitive conduct.[2]

---

[2] *Conwood* was issued following a jury trial, at which point extensive discovery and fact development had already occurred. Because the pleading standard is much more lenient and because Vitamin Energy makes sufficient and specific factual allegations of the type alleged in *Conwood*, the Court should find the

As with moist snuff in *Conwood*, the denial of access to point-of-sale locations is crippling to energy shot companies' sales and ability to grow their businesses. *Compare Conwood*, 290 F.3d at 784 *with* Compl., R.1, PageID #9-11, ¶¶ 34-40 ("Placement of an energy shot rack on the counter at or near the cash register point-of-sale is considered placement at a prime location," given "value energy shot Health & Beauty Aids or novelty merchandising placement in stores produces far fewer sales than does the point-of-sales placement."); *see also* Compl., R.1, PageID #27, ¶ 106 ("For low-cost consumer purchases that are often impulse purchases [such as energy shots], consumers likely pay even less attention to advertising that they do not encounter at the point-of-sale, further increasing the cost to competitors to obtain meaningful consideration of their energy shots."). And like plaintiffs in *Conwood*, Vitamin Energy alleges that 5-Hour entered into unlawful exclusive agreements with retailers that led to the removal of virtually all non-5-Hour energy shot sales racks from point-of-sale locations. *Compare Conwood*, 290 F.3d at 775 *with* Compl., R.1, PageID #23-24, 29-30, 35, ¶¶ 87-91, 115-18, 138.

In denying the Motion for Relief, the District Court tried to distinguish *Conwood*. It said the conduct in *Conwood* went beyond exclusive agreements because the defendant there "pervasively destroyed the plaintiff's racks." (Op. &

---

Complaint plausibly alleges the existence of 5-Hour's unlawful exclusive agreements and, by extension, anticompetitive conduct.

Order, R.37, PageID #1077.) It then said that Vitamin Energy "has only alleged the exclusive nature" of 5-Hour's agreements. (Op. & Order, R.37, PageID #1078.) That is not correct. The Complaint alleges that 5-Hour induced Pilot Flying J to remove Vitamin Energy's racks from the counters. (Compl., R.1, PageID #23, ¶ 85.) It further alleges that the racks "were thrown away or destroyed," that Vitamin Energy was not told in advance, and that none of the racks were returned. (Compl., R.1, PageID #24, ¶ 93.) In any event, exclusive dealing by a monopolist is enough to show anticompetitive conduct. *CoStar Group, Inc. v. Commercial Real Estate Exchange, Inc.*, 150 F.4th at 1066. A plaintiff does not need to plead every tactic used in *Conwood* to state a claim.

Yet the District Court concluded that the Complaint failed to distinguish Vitamin Energy's agreement with Pilot from that between 5-Hour and Pilot such that "the Court will logically assume that a counter placement agreement with retailers is not out of the norm in the energy drink business." (Order, R.28, PageID #777.) As an initial matter, this is fact-finding plain and simple, and is wholly inappropriate at this stage of litigation. *Saad v. Healthgrades Marketplace, LLC*, 788 F. Supp. 3d 809, 815 (E.D. Mich. Oct. 30, 2024) ("At the motion to dismiss stage, the court does not consider whether the factual allegations are probably true; instead the court must accept the factual allegations as true, even when skeptical.").

Moreover, the Complaint clearly distinguished between the 5-Hour-Pilot agreement—which was accompanied by an understanding that Pilot would remove competing energy shot products from point-of-sale locations—and the Vitamin Energy-Pilot agreement, which contained no such exclusionary provisions. *Contrast* Compl., R.1, PageID #20, ¶ 75 ("Vitamin Energy secured a contract to place Vitamin Energy retail display racks[.]") *with* Compl., R.1, PageID #23, ¶ 87 ("Defendants entered into an agreement with Pilot Flying J to obtain and maintain dominant placement of 5-hour ENERGY shots on the counter at the point of sale . . . ***with the understanding that Pilot would remove competing energy shots, including Vitamin Energy shots, from preferred counter placements***[.]") (emphasis added).

On the Motion for Relief, the District Court accepted that Vitamin Energy's agreement differed from 5-Hour's agreements. But it held that this difference "does not alter the Court's outcome." (Op. & Order, R.37, PageID #1073-74.) To reach that result, the court drew its own inference against Vitamin Energy. It "interpret[ed]" the exclusion as one imposed by retailers, "even if unintentional and due to limited counter space." (Op. & Order, R.37, PageID #1076.) The court admitted that this case differs from *NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007) (en banc), on that point. (Op. & Order, R.37, PageID #1076 n.3.) And the Complaint alleges the opposite. It alleges that 5-Hour paid rebates "with the understanding that Pilot would remove competing energy shots, including Vitamin

Energy shots, from preferred counter placements." (Compl., R.1, PageID #23, ¶ 87; *see also* Compl., R.1, PageID #29-30, ¶ 115.) The court also pointed to photos of Vitamin Energy's racks, which hold only Vitamin Energy products. (Op. & Order, R.37, PageID #1076.) But a rack that holds one brand is not the same as a monopolist paying retailers to remove its rivals from the counter. Choosing between competing inferences is not proper at the pleading stage. *Watson Carpet*, 648 F.3d at 458.

Vitamin Energy is a newcomer seeking a foothold in the market dominated by 5-Hour's monopoly. Unlike Vitamin Energy's retailer agreements, 5-Hour's exclusive agreements with retailers involve a monopolist's use of exclusive agreements to maintain its market dominance and to foreclose competition. This clearly is not "within the norm" of the energy shot market. Nor is it legal. *See Aspen Skiing*, 472 U.S. at 605 (internal quotation marks omitted) ("If a firm has been attempting to exclude rivals on some basis other than efficiency, it is fair to characterize its behavior as predatory.").

Nor is the absence of explicit provisions requiring removal of competing sales racks from point-of-sale locations in 5-Hour's exclusive agreements sufficient to undermine the Complaint's allegations of an unwritten understanding. *CoStar Group, Inc. v. Commercial Real Estate Exchange, Inc.*, 150 F.4th at 1073 ("To dismiss an exclusive dealing claim just because a contract does not expressly require exclusivity would be the type of overly formalistic rule that the Supreme Court has

cautioned against in antitrust cases."); *ZF Meritor*, 696 F.3d at 270 ("An express exclusivity requirement, however, is not necessary, because we look past the terms of the contract to ascertain the relationship between the parties and the effect of the agreement in the real world.") (internal quotation marks and citation omitted). The Complaint alleges such an understanding. (*See*, *e.g.*, Compl., R.1, PageID #35, ¶ 138.) In fact, the Complaint alleges facts demonstrating that 5-Hour's agreements with convenience and non-convenience stores alike "could help [5-Hour] control output" and keep competitors out of the market. *Marathon Petroleum*, 191 F. Supp. 3d at 703 (supply agreements "could help Marathon control output"); *see* Compl., R.1, PageID #23-24, 29-30, 35, ¶¶ 87-91, 115-18, 138.

### 3. The Complaint Adequately Alleges Antitrust Injury

To demonstrate an antitrust injury, one must show defendant's anticompetitive conduct tends to reduce competition in the relevant market and that plaintiff's injury results from that reduction in competition rather than from some other consequence of defendant's actions. *Conwood*, 290 F.3d at 788. The District Court concluded Vitamin Energy failed to allege an antitrust injury on several grounds, each of which is wrong and warrants reversal.

First, the District Court determined that Vitamin Energy alleged only harm to itself and not to competition in the energy shot market more broadly. (Order, R.28, PageID #779.) The District Court went on to find that "even if [Vitamin Energy's]

profit loss could substantiate its claims, Vitamin Energy's profit loss is not significant enough to support the existence of market harm." (Order, R.28, PageID #779.) The District Court provided no support or explanation for this conclusion.

In the Sixth Circuit, all one must plead to establish antitrust injury is that (1) defendant's conduct led to *reduced competition* in a relevant market, and (2) plaintiff's injury resulted from that decrease in competition. *See Louisa Coca-Cola Bottling Co. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 94 F. Supp. 2d 804, 813 (E.D. Ky. 1999) (quoting *Tennessean Truckstop, Inc. v. NTS, Inc.*, 875 F.2d 86, 88 (6th Cir. 1989)).

The Complaint does just this by alleging that, in causing the removal of non-5-Hour sales racks from point-of-sale locations, 5-Hour's exclusive agreement with Pilot Flying J "remov[ed] information about and the availability of other choices than 5-hour ENERGY" from critical point-of-sale locations. (Compl., R.1, PageID #28-29, ¶ 111.) The Complaint makes similar allegations concerning the effects of 5-Hour's exclusive agreement with Casey's, namely that the agreement,

> has prevented energy shot competitors other than 5-hour Energy from obtaining product placement in Casey's 2,500 convenience stores . . . . and thus increased the barriers to entry for energy shot competitors in the same manner . . . [as] the Pilot Flying J anticompetitive placement agreement.

(Compl., R.1, PageID #30-31, ¶¶ 120-22.) The Complaint continues, alleging the Casey's agreement,

> has prevented consumers from being offered and finding energy shots with attributes desired by consumers in Casey's 2,500 convenience stores . . . . thus decreas[ing] consumer choice and reduc[ing] the availability of alternatives to Defendants' 5-hour ENERGY shots.

(Compl., R.1, PageID #31, ¶¶ 122-23.) As evidenced by these allegations, the Complaint alleges widespread harm to competition in the energy shot market in the form of market foreclosure caused by restricted access to critical point-of-sale sales rack placements, which in turn harms end consumers by preventing them from easily comparing energy shots impulsively purchased at store checkout points. Yet contrary to the applicable pleading standard, the District Court failed to credit these specific allegations of antitrust injury.

The District Court repeated the same error when it denied the Motion for Relief. It found that "consumers still have choice—even if not at the check-out counters." (Op. & Order, R.37, PageID #1079-80.) It also found that 5-Hour's agreements are "of limited duration." (Op. & Order, R.37, PageID #1080.) Neither finding comes from the Complaint and further supports Vitamin Energy's position that the District Court imposed too high of a burden on Vitamin Energy at the pleading stage. The Complaint alleges that the point of sale is where consumers compare and buy energy shots, and that removing rivals from that spot reduces consumer choice. (Compl., R.1, PageID #27, ¶¶ 104-06.) The only support the court cited for "limited duration" was a retailer's email. In that email, the retailer said it

had just signed a two-year contract with 5-Hour and could not make changes. (Op. & Order, R.37, PageID #1080; Compl., R.1, PageID #35, ¶ 136.) That email shows foreclosure. It does not disprove it. The court also agreed that counter placement "may very well be important and result in economic harm in the form of reduced sales." (Op. & Order, R.37, PageID #1081.) That concession supports Vitamin Energy's allegation that losing the counter is a barrier to entry. (Compl., R.1, PageID #26-27, ¶ 103.)

Second, the District Court concluded that "simply losing a competitive placement on the counter [did] not harm competition overall" because Vitamin Energy nonetheless continued to earn a "substantial profit at Pilot." (Order, R.28, PageID #777.) But Vitamin Energy's continued sales—which are miniscule compared to those of the monopolist 5-Hour—are not dispositive here. What *is* dispositive is the fact that Vitamin Energy and its fellow energy shot competitors were precluded from taking market share from the monopolist, 5-Hour, as a result of 5-Hour's use of exclusive contracts with retailers. *See Grinnell Corp.*, 384 U.S. at 570-71; *see also McWane, Inc. v. FTC*, 783 F.3d 814, 832 (11th Cir. 2015) ("Exclusive dealing arrangements are not per se unlawful, but they can run afoul of the antitrust laws when used by a dominant firm to maintain its monopoly.")

Third, the District Court erred when it found "[a] 30% decrease in profit over a single year can hardly substantiate an antitrust injury without additional factual

support," Order, R.28, PageID #780, because the Complaint *does* provide additional factual allegations to support a finding of harm beyond Vitamin Energy's lost sales. Vitamin Energy pleaded that from 2020 and beyond, its sales at Pilot Flying J stores remained significantly below 2020 sales and depressed total sales in the long run. (Compl., R.1, PageID #25-26, ¶¶ 98-99.)

Indeed, this conclusion by the District Court overlooks the Complaint's allegations *specifically linking Vitamin Energy's losses to 5-Hour's exclusive agreements*. Namely, the Complaint alleges that: (1) prior to 5-Hour's anticompetitive scheme, "IRI Worldwide data show[ed] that sales numbers for Vitamin Energy shots increased dramatically as a result of the Pilot Flying J counter rack program," Compl., R.1, PageID #22, ¶ 83; (2) upon learning of Vitamin Energy's counter rack program, 5-Hour "induced Pilot Flying J to swiftly remove the Vitamin Energy racks along with other Vitamin Energy products from the point-of-sale locations . . . while 5-hour ENERGY shots retained their placement on the counter at the point-of-sale," Compl., R.1, PageID #23, ¶ 85; (3) 5-Hour so induced Pilot Flying J, and subsequently other energy shot retailers, through agreements in which 5-Hour paid rebates to retailers with the understanding those retailers would them "remove competing energy shots, including Vitamin Energy shots, from preferred counter placements near the cash register," Compl., R.1, PageID #23-24, 29-30, ¶¶ 87-89, 115-18; and (4) due to those retailers' removal of non-5-Hour

energy shot sales racks from point-of-sale locations—the direct consequence of 5-Hour's exclusive agreements—Vitamin Energy *and other energy shot companies* suffered lost sales and unfair market foreclosure, Compl., R.1, PageID #24-27, ¶¶ 94-99, 102, 106. Accepting, as it must, the Complaint's well-pleaded allegations as true, *see Kerchen*, 100 F.4th at 760, the District Court should have found more than sufficient evidence to support a finding of antitrust injury.

In a similar vein, District Court found Vitamin Energy's "approximately $150,000 in Pilot sales profits [made] *after* its products were allegedly removed from Pilot counters," demonstrated the energy shot market remained competitive, thereby undermining Vitamin Energy's allegations of antitrust injury. (Order, R.28, PageID #781.) As an initial matter, the District Court mischaracterized the Complaint, which alleges that 5-Hour's exclusive agreement with Pilot Flying J caused Vitamin Energy's *sales*—not profits—to fall to approximately $150,000. (Compl., R.1, PageID #24-25, ¶ 94.)

On the Motion for Relief, the District Court allowed that it may have "inadvertently conflated sales with profit," but it held that its conclusion did not change. (Op. & Order, R.37, PageID #1078.) It reasoned that if Vitamin Energy never made a profit, the court "cannot find" that 5-Hour's agreements caused that result. (Op. & Order, R.37, PageID #1078.) But causation is a question of fact. The Complaint alleges that Vitamin Energy's sales grew fast with counter placement and

fell after 5-Hour's agreement removed its racks. (Compl., R.1, PageID #22, 24-25, ¶¶ 83, 92-95.) Those allegations must be taken as true. Furthermore, the District Court's conclusion not only improperly fails to accept Vitamin Energy's well-pleaded allegations but also is unsupported by and, in fact, is contrary to Sixth Circuit precedent. *See*, *e.g.*, *Conwood*, 290 F.3d at 788-90 (fact of plaintiff's profits and increased market share does not necessarily undermine existence of anticompetitive conduct or antitrust injury).

As the Complaint clearly demonstrates, point-of-sale sales rack placement is critical to the success and sales of energy shot companies. (Compl., R.1, PageID #19-20, 22, ¶¶ 70-75, 83.) Indeed, when Vitamin Energy obtained point-of-sale placement at Pilot Flying J stores in 2020, just two years after the company began selling its energy shots, its sales at those locations rose to over $225,000 in mere months. (Compl., R.1, PageID #24, 34, ¶¶ 92, 133; Compl., R.1, PageID #17, ¶ 60.) Vitamin Energy's sales at Pilot Flying J locations only fell when 5-Hour entered into its unlawful exclusive agreement with the retailer, which resulted in Vitamin Energy losing its point-of-sale rack placements. (Compl., R.1, PageID #24-25, ¶¶ 93-95.) Thus, not only did 5-Hour's unlawful exclusive agreement reduce Vitamin Energy's sales at Pilot Flying J locations by over 30 percent, it also fundamentally changed Vitamin Energy's trajectory from being a new entrant successfully competing with the dominant market player to actively losing sales and being foreclosed from

legitimate competition in most retail locations. (Compl., R.1, PageID #24-25, ¶¶ 93-97.) These allegations are sufficient to allege an antitrust injury. *See Conwood*, 290 F.3d at 789-90 (finding sufficient evidence of antitrust injury based, in part, on the contention that plaintiff's market share grew by only 2.5 percent following defendant's anticompetitive scheme, a "stark contrast" to the 11 percent market share increase it experienced prior to the scheme.).

Fourth, in finding "a multi-year agreement between a supplier and a retailer amounts to legitimate competition, not an antitrust injury," Order, R.28, PageID #776, the District Court made an improper finding of fact, ignoring its mandate to assess the Complaint under the permissive *Twombly* pleading standard. Taken as true, with all inferences made in favor of Vitamin Energy, *as is required under the motion to dismiss pleading standard*, the Complaint's allegations clearly provide sufficient facts to support a finding that 5-Hour engaged in anticompetitive conduct that in turn resulted in antitrust injury. (*See* Compl., R.1, PageID #26-27, ¶¶ 102, 105-06.)

Fifth, the District Court missed a critical clarification made in the Complaint: 5-Hour's exclusive agreements with Pilot and Casey's are just two examples of ***thousands*** that 5-Hour has with convenience and non-convenience store retailers alike. (Compl., R.1, PageID #34-35, ¶¶ 135, 138 ("Defendants also have exclusive placement agreements in place with other large non-convenience store retailers such

as Dollar General, which operates over 25,000 stores."); Compl., R.1, PageID #36-37, ¶ 144 ("Living Essentials entered into anticompetitive rack placement agreements with thousands of convenience stores[.]").) Given the number of stores covered by 5-Hour's exclusive agreements, harm to competition in the energy shot market is not just inevitable and imminent but has been already realized. (Compl., R.1, PageID #34-36, ¶¶ 134, 137, 139, 141-42.)

The District Court's opinion of the Complaint's monopolization claim reads like a decision on the merits after trial to determine whether there had been adequate proof that the antitrust injury existed. But the test at this stage is plausibility, not probability. *See Twombly*, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage . . . ."). The Supreme Court in *Twombly* was clear: A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." 550 U.S. at 556. Here the Complaint alleges specific facts that the District Court did not address in its decision, but that should have been credited fully at this stage. The District Court thus erred by not faithfully applying a *Twombly* analysis in its opinion. Accordingly, the Court should reverse the District Court's decision and should instead find the Complaint plausibly alleges a monopolization claim against 5-Hour.

### B. <u>Vitamin Energy's Remaining Claims</u>

The District Court dismissed Vitamin Energy's attempted monopolization claim solely on its rejection of Vitamin Energy's monopolization claim. (Order, R.28, PageID #781-82.) Thus because the District Court's dismissal of the monopolization claim should be reversed in its entirety, so too should its dismissal of the attempted monopolization claim.

#### 1. Attempted Monopolization Under Section 2

Attempted monopolization consists of three elements: (1) defendant engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v McQuillan*, 506 U.S. 447, 456 (1993). Defendant need not succeed in achieving a monopoly to be liable for attempted monopolization. *See Lorain Journal Co. v. United States*, 342 U.S. 143, 153-54 (1951).

##### *a. Vitamin Energy Adequately Alleges Anticompetitive Conduct*

The District Court dismissed the Complaint's attempted monopolization claim upon concluding that Vitamin Energy failed to allege anticompetitive conduct to support its monopolization claim. (Order, R.28, PageID #781-82.) But the Complaint does allege sufficient facts to plausibly allege anticompetitive conduct. Part IV.A.2 *supra*. Because of its error, the District Court did not consider the remaining allegations pertinent to Vitamin Energy's attempted monopolization

claim; had it done so, the District Court should have found the remaining claim elements plausibly alleged.

#### *b. Vitamin Energy Adequately Alleges Specific Intent to Monopolize*

Specific intent to monopolize is the "specific intent to 'destroy competition or build a monopoly.'" *Conwood*, 290 F.3d at 782. Specific intent "may be inferred from evidence of anticompetitive conduct . . . but not from legitimate business practices aimed only at succeeding in competition." *Scooter Store Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1116 (S.D. Ohio 2011) (quoting *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 917 F.2d 1413, 1432 (6th Cir. 1990)). Because questions of motive and intent are particularly fact-intensive, courts generally will not dismiss attempted monopolization claims for failure to plead specific intent until the parties have had an opportunity for discovery. *Scooter Store*, 777 F. Supp. 2d at 1118 (citing *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998)).

#### *c. Vitamin Energy Adequately Alleges a Dangerous Probability of Success*

To establish dangerous probability of success, plaintiff must first define the relevant market and then plead facts sufficient to create an inference defendant has a dangerous probability of achieving monopoly power in said market. *Conwood*, 290 F.3d at 782. The Complaint demonstrates that the 2-ounce energy shot market in the

United States is the relevant market. (Compl., R.1, PageID #8-9, 17, 58-59, ¶¶ 25-28, 58, 213-17 for the relevant market.) The Complaint also demonstrates that 5-Hour has a greater than 90% share of the relevant market—an amount far greater than the minimum needed to establish monopoly power—and that 5-Hour's exclusive agreements foreclosed all other energy shot companies from fair competition in the relevant market. (Compl., R.1, PageID #8-9, 27, 30-31, 59, ¶¶ 25, 28, 104-06, 118-24, 216.) Collectively, these allegations create an inference of a dangerous probability that 5-Hour will achieve and maintain—because it already has achieved and maintained—an unlawful monopoly. *See Scooter Store*, 777 F. Supp. 2d at 1117 (finding allegations that defendant, "[b]y its own admission, [] sells more [relevant product] . . . than any of its competitors," coupled with allegations of defendant's exclusionary conduct, sufficiently established the dangerous probability of success element.).

### C. <u>The District Court Erred in Refusing to Grant Leave to Amend</u>

"[D]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on *de novo* review that the complaint could not have been saved by an amendment." *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) (quotation marks and citation omitted).

Leave to amend should be "freely given when justice so requires." *Keweenaw Bay Indian Cmty. v. Mich.*, 11 F.3d 1341, 1348 (6th Cir. 1993) (quoting Fed. R. Civ.

P. 15(a)). Moreover, this Court has determined that "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the District Court dismisses the action with prejudice." *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) (quoting *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993)); *see also Brown v. Matauszak*, 415 F. App'x 608, 614-16 (6th Cir. 2011) (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004)) ("When a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend."). In dismissing the Complaint with prejudice without giving Vitamin Energy even one opportunity to amend, the District Court ignored this Sixth Circuit guidance and erred in its ruling.

The District Court provided just one reason to support its decision to dismiss the Complaint with prejudice: that "no plausible antitrust injury exists based upon the agreements at issue[.]" (Order, R.28, PageID #795.) But the District Court provided ***no*** explanation as to how it reached the conclusion that "no plausible antitrust injury exists" nor did it cite to any case law to substantiate its determination. Indeed, the District Court could not make such a determination because not only have the exclusive agreements at issue not been entered into the record, but also the Complaint clearly alleges that those agreements included unwritten understandings that the rebates 5-Hour provided were subject to retailers' removal of Vitamin

Energy's and other energy shot companies' sales racks. (*See*, *e.g.*, Compl., R.1, PageID #35, ¶ 138.) These agreements harmed consumers by reducing choice and allowing the monopolist to perpetuate its dominant position in the energy shot market.

Vitamin Energy then asked the District Court for leave to amend and filed a proposed amended complaint. (Op. & Order, R.37, PageID #1084; Proposed Amended Complaint, R.32, PageID #820-902.) The proposed amended complaint added sworn testimony from 5-Hour's own witnesses about the importance of counter placement. (Mot. for Relief, R.30, PageID #811-12.) The District Court still held that amendment would be futile. It did so in a single sentence, stating only that the proposed amended complaint "does not address the deficiencies" in the original. (Op. & Order, R.37, PageID #1084.) The court did not discuss any of the new allegations. It also said that the new testimony was "unnecessary at the motion to dismiss stage" because the court takes the allegations as true. (Op. & Order, R.37, PageID #1082-83.) But a court that takes the allegations as true could not find, as this court did, that consumers "still have choice" or that any exclusion was imposed by retailers rather than by 5-Hour. (Op. & Order, R.37, PageID #1076, 1079-80.)

Thus, because the Complaint provides numerous specific factual allegations to support its claims against Defendants, *see* Part IV.A-B *supra*, this Court should,

at a minimum, reverse the District Court's decision as it relates to its denial of leave to amend the Complaint.

## V. CONCLUSION

For the foregoing reasons, Vitamin Energy respectfully requests that the Court reverse in full the District Court's dismissal of the Complaint or, in the alternative, reverse the District Court's denial of leave to amend the Complaint.

Dated: November 2, 2026

Respectfully submitted,

/s/*Steven Susser*
Steven Susser (P52940)
Jessica Fleetham (P81038)
**Evia Law PLC**
231 S Old Woodward, Suite 220,
Birmingham, MI 48009
248.243.1201
steven@evialaw.com
jessica@evialaw.com

Attorneys for Plaintiff-Appellant
VITAMIN ENERGY, INC.

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,079 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Times New Roman**.

Dated: November 2, 2026

Respectfully submitted,

/s/*Steven Susser*
Steven Susser (P52940)
Jessica Fleetham (P81038)
**Evia Law PLC**
231 S Old Woodward, Suite 220,
Birmingham, MI 48009
248.243.1201
steven@evialaw.com
jessica@evialaw.com

Attorneys for Plaintiff-Appellant
VITAMIN ENERGY, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2026, I electronically filed the foregoing **APPELLANT'S BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the Appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Appellate CM/ECF system.

Respectfully submitted,

/s/*Steven Susser*
Steven Susser (P52940)

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to 6th Cir. R. 28(b)(1)(A)(i) and 30(g), Plaintiff-Appellant Vitamin Energy, Inc. designates the following filings from the district court's electronic record, *Vitamin Energy, Inc. v. Bhargava, et al.*, No. 2:24-cv-13125 (E.D. Mich.):

| Description of Entry | Date Filed | R. No. | PageID # Range |
|---|---|---|---|
| Complaint | 11/22/2024 | 1 | 1–70 |
| Defendants' Motion to Dismiss (filed under seal) | 2/10/2025 | 19 | 395–445 |
| Order Granting Defendants' Motion to Dismiss | 8/29/2025 | 28 | 766–797 |
| Judgment | 8/29/2025 | 29 | 798 |
| Plaintiff's Motion for Relief Under Fed. R. Civ. P. 59(e) and 60(b)(1)-(2) | 9/12/2025 | 30 | 800–818 |
| Exhibit A to Motion for Relief – Proposed Amended Complaint (redacted) | 9/12/2025 | 30-2 | 820–902 |
| Proposed Amended Complaint | 9/12/2025 | 32 | 936–1035 |
| Plaintiff's Motion for Status Conference | 6/2/2026 | 36 | 1065–1067 |
| Opinion and Order Denying Motion for Relief | 8/21/2026 | 37 | 1068–1086 |
| Notice of Appeal | 9/9/2026 | 39 | 1107–1108 |